## SUPERIOR COURT.

### GEORGE H. BUSSING and others agt. JOHN THOMPSON.

The defendant, prosecuting the business of a banker, the plaintiffs, in November, 1855, employed him to act as their banker, receive their deposits, collect their bills, &c., and credit them with the amount, agreeing he might use the moneys, and he agreeing to pay their drafts on him, when presented, and interest on the balances, at the rate of five per cent. They continued to act under this agreement, and on the 13th of August, 1857, the plaintiffs remitted to defendant a draft for $4,000, payable the 25th, to be collected and passed to their credit, under this agreement. Defendant received it on the 15th, and collected it on the 25th, and used the money; on the 24th, he knew he was insolvent, and on the morning of the 25th, avowed his purpose to suspend, and did soon after the $4,000 was collected.

*Held*, that defendant did not receive the money in a *fiduciary capacity*. His failure after he received, and before the maturity of the draft, did not annul the agreement between him and the plaintiff, or convert him into a trustee.

*Also*, that he did not convert the money to his own use, "wrongfully," within the meaning of that word, as used in the *Code*, nor was he guilty, in judgment of law, of a fraud, in using the money; nor was he guilty of a fraud, in incurring the obligation to pay the $4,000 to the plaintiffs.

Therefore, also *held*, that the defendant could not be held to bail, in an action to recover the $4,000, he having failed to pay it, on a demand made subsequent to his failure.

*General Term, January*, 1858.

*Before* DUER, *Ch. J.*, BOSWORTH, HOFFMAN, SLOSSON *and* WOODRUFF, *Justices.*

THIS action comes before the court, on an appeal by the plaintiffs from an order vacating an order directing the defendant to be arrested and held to bail.

The moving and opposing affidavits present certain undisputed facts; up to and for several years prior to the 25th of August, 1857, the defendant was prosecuting extensively, the business of a banker, in the city of New-York. The plaintiffs reside in Cincinnati, Ohio. In November, 1855, they opened an account with the defendant as their banker. At that time an agreement was made between the plaintiffs and the defend-

ant, that defendant should receive and credit to the plaintiffs, all moneys deposited by them, and the proceeds of all drafts, bills and other securities, which they should remit to him for collection on their account. The defendant was to accept and pay the plaintiffs' drafts from time to time, as they should be presented, and pay and allow interest upon all balances of deposits and credits, at the rate of five per cent. per annum, as a compensation for the use of such credits and deposits.

Under this arrangement, the parties continued to transact business with each other, up to the suspension of the defendant's business, on the 25th of August, 1857.

The deposits made by the plaintiffs with the defendant, and by him passed to their credit, amounted in the whole to $302,998.77, including credits for interest, under the said agreement, amounting to $351.61. The plaintiffs had drawn on the defendant against these deposits and credits, from time to time, drafts amounting to several hundred in number, and to an aggregate amount of $292,029.64.

The defendant was held to bail, by reason of his receiving and refusing to pay to the plaintiffs, on demand, $4,000, proceeds of a draft, dated Cincinnati, 13th August, 1857, drawn by C. E. Nourse & Co., on Ketchum, Howe & Co., of N. T., and payable on the 25th of August, 1857. This draft was sent from Cincinnati by the plaintiffs to the defendant, on the 13th, with a check for $199, and the two were received by the defendant, on the 15th of August, 1857. The item of $199, was collected and placed to the plaintiff's credit on the 15th, and the bill for $4,000 on the 25th of August, 1857.

The defendant's business was extensive, and required the employment of some eighteen clerks. So far, there is no dispute about the facts.

There is nothing tending to show that the defendant personally knew of the fact of the receipt of the bill for $4,000, until after it had been collected by his clerks, and passed to the plaintiffs' credit.

There are affidavits which strongly tend to show that he did not.

The particular facts relied upon as creating the right to hold the defendant to bail, are, that on the 24th of August, 1857, Thompson was insolvent and knew that fact, and had no balance whatever in bank or in his office, and on the morning of the 25th, before the $4,000 draft was paid, told the cashier of the Bank of the Republic, that he had made up his mind to fail. Before the draft was collected, the balance due from the defendant to the plaintiffs was $6,900, and after that $10,900. The $4,000 was demanded of the defendant on the 31st of August, 1857, and he did not pay it, alleging as a reason that he had failed.

The plaintiffs insist, that the $4,000 was received by Thompson in a fiduciary capacity, and as a trustee for the plaintiffs, and that applying it to purposes other than paying the plaintiffs, was a wrongful conversion of it to his own use, and that the obligation to account for and pay over the money, was fraudulently incurred.

WM. STANLEY, *for plaintiffs and appellants.*

E. MORE, *for defendant and respondent.*

By the court—BOSWORTH, Justice. There is no ground for pretending that Thompson on the 15th of August, 1857, when he received the $4,000 draft, was insolvent, or contemplated becoming so.

He received it pursuant to an agreement, under which he had then been acting nearly two years. That agreement made it his duty to collect the draft, and gave him a right to use the proceeds, and made him liable to pay interest on any balance of which it might form a part, until he was required to pay the balance itself.

There was no fraud in receiving or collecting the draft. It is urged, however, that having collected it, he should have deposited the proceeds to the plaintiffs' credit, with some depositary. But the agreement between the parties did not require this. So depositing it, would not have relieved him from a personal liability to pay the amount to the plaintiffs, if the

depositary had failed, nor from his promise to pay interest, until payment of the principal should be demanded and made.

A person cannot be said to have received money in 'a fiduciary capacity, who receives it upon an agreement that he may use it in his own business and for his own purposes, and shall become a debtor for the amount, and shall pay interest at a stipulated rate, to be ascertained and struck, at times and from time to time, and in a manner previously agreed upon.

The defendant received the draft on the 15th of August, on an agreement to collect it, and that he might use the proceeds. Being solvent then, and not then contemplating insolvency, the agreement existing at the time he received it, and which determined his duties and rights, gave him authority to collect the draft, and use the proceeds in his own business.

We cannot accede to the proposition that his failure on the 25th, connected with knowledge on the 24th, that he had become insolvent, and the conclusion arrived at on the morning of the 25th, that he must fail, annulled the agreement under which the draft had been received on the 15th, and converted the defendant into a trustee of the plaintiffs, divested of all power or authority to use the proceeds, as it was agreed he might do, when he received the draft, and undertook to collect it.

The money, therefore, was not received in a fiduciary capacity. The use made of it was authorized by the agreement under which the draft was received, which agreement had been acted upon nearly two years, and under which the defendant had received and collected moneys for which he had made himself the plaintiff's debtor, to more than $300,000 in the aggregate. The relation between the parties was that of debtor and creditor, and not that of trustee and *cestui que trust*.

There was no conversion of the moneys to the defendant's use, wrongful, in judgment of law.

There was no fraud in contracting the debt or incurring the obligation for which this action is brought. The obligation was incurred and was complete when the draft was received. It was received in good faith, under an agreement subsisting at the time, which covered the whole matter of collecting the

draft, the disposition of the proceeds, and prescribing the time when the amount should be paid to the plaintiffs, and the interest to be allowed by the defendant for the use of it, until payment should be made.

The defendant has done whatever he has done, down to and including the collection of the draft and the use of the money, as the plaintiffs agreed he might do. His right to use it, and his liability to pay interest, resulted from the agreement under which the draft was received. And the state of things then existing must be looked at to determine whether the defendant's liability was fraudulently incurred, as he has conformed in all respects to his agreement, except to pay the money when the plaintiffs demanded it. Being a mere debtor for the amount, it cannot be said that he was guilty of a fraud in contracting the debt, when there is no just pretence for saying that he was guilty of any fraud or bad faith, in making the agreement under which he received the draft, without he received it under such agreement, knowing or suspecting that he would not be able to perform it.

So far as the actual intent of the defendant in any part of the transaction is involved or is material, there is no reason to conclude that he personally knew of the receipt or collection of the draft, until after his business was suspended. And it may also be observed that, as to the item of $199, which was remitted in the same letter with the $4,000 draft, no point is made in the affidavits, that the liability of Thompson for that, is one in respect to which the right to hold him to bail exists.

We are of the opinion, that upon the facts established by the affidavits, on which the order appealed from was made, the defendant did not "wrongfully convert the property of the plaintiffs."

That he was not acting "in a fiduciary capacity," in collecting the draft and receiving the amount of it.

That he was not "guilty of a fraud in contracting the debt or incurring the obligation for which this action is brought,"

or in "disposing of the property," the proceeds of the draft, which it is alleged he has converted to his own use.

Unless some one of these facts have been established, it is not claimed that any ground has been shown to exist, which, by the Code, gives the right to hold the defendant to bail. The order must, therefore, be affirmed.